UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN JAMAL LANG,

                  Plaintiff,

v.

UNKNOWN RODERICK et al.,

                  Defendants.

_____/

Case No. 1:25-cv-1278

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a former state prisoner, who initiated this action when he was incarcerated, under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint without prejudice for failure to state a claim.

**Discussion**

I.      **Factual Allegations**

The events about which Plaintiff complains occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. In this action, Plaintiff sues Michigan Department of Corrections (MDOC) Grievance Manager Richard D. Russell and the following LRF Staff: Corrections Officer Unknown Roderick, Warden Chris King, Sergeant Unknown Party, "CCR" D. Page, and Warden's Office Staff Member B. Smith in their official and personal capacities. (Compl., ECF No. 1, PageID.1–3.)

Plaintiff alleges that on October 28, 2023, two inmates assaulted him. (*Id.*, PageID.4.) After the assault, Defendant Roderick "cuffed and escorted [Plaintiff] to segregation and wrote [him] a misconduct for resisting being cuffed and escorted to segregation."[1] (*Id.*) Plaintiff was "reviewed [on the misconduct report] by a Sergeant [i.e. Defendant Unknown Party] . . . and interviewed by the Hearings Investigator." (*Id.*) Plaintiff was "segregated, put on sanctions pending court, and put in the hole." (*Id.*) He claims that he "expressed to all of these people [the MDOC] policy that states [he] should not be subjected to this treatment [but] they didn't care." (*Id.*) The MDOC policy Plaintiff refers to is a "policy [which states], 'the victim of an assault and battery should not be charged with a violation of this [misconduct] rule.'" (*Id.*)

Plaintiff alleges that the policy exempting victims from a misconduct report should have been applied to him because he was the victim of the assault. (*See id.*) Plaintiff states that after he was "robbed by three other inmates directly before [he] was assaulted" by two other inmates, two

---

[1] In this opinion, the Court corrects the punctuation and abbreviations in quotations from Plaintiff's filings.

non-party ICF correctional officers "contacted the control center" regarding the earlier robbery, and "staff [were] aware of this chain of events." (*Id.*)

Then, following the assault by the other inmates and while Plaintiff was being handcuffed and escorted to segregation by Defendant Roderick, Plaintiff states that he "was not thinking clearly, [and] was trying to get away [. . . because] inmates even were trying to punch [him] while [he] was being cuffed. [He] could not just stand there." (*Id.*)

In response to the above-described events, Plaintiff "wrote a grievance which was ultimately denied by Warden C. King, CRR D. Page, and Richard D. Russell." (*Id.*) Plaintiff states that "all of these people violated simple clear policy and ultimately re-traumatized [him] and left [him] feeling helpless." (*Id.*) Plaintiff further states he is "still struggling mentally to this day following these events [and] ha[s] dreams about it. [He] ha[s] a psych also that [he] speak[s] with regularly." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment failure to protect and Fourteenth Amendment due process claims. The Court also construes Plaintiff's complaint to raise § 1983 claims regarding the violation of prison policy. As relief, Plaintiff seeks monetary damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

3

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Smith

Plaintiff lists Defendant B. Smith of the Warden's Office as a Defendant in this action; however, Plaintiff fails to allege any facts showing how this Defendant was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.) Plaintiff also fails to name Defendant Smith in the body of his complaint. (*Id*.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (2007) (holding that, in order to state a claim, a

4

plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Because Plaintiff fails to allege any facts or name Defendant Smith in the body of his complaint, Plaintiff's claim against this Defendant falls far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, Plaintiff's complaint will be dismissed for failure to state a claim against Defendant Smith.

### B.    Eighth Amendment Failure to Protect Claims

The Court construes Plaintiff's complaint to raise Eighth Amendment failure to protect claims against Defendants. (*See generally* Compl., ECF No. 1.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show

that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

### 1.    Defendants Roderick and Unknown Party

Plaintiff alleges that "staff [were] aware" that he had been "robbed by three other inmates directly before [he] was assaulted." (*Id.*) There are no facts in Plaintiff's complaint regarding when or how the robbery occurred, any responses from ICF staff, whether an investigation occurred, or any outcome of the incident. (*See id.*) He only states that two non-party ICF correctional officers had "contacted the control center" regarding the earlier robbery, and that "staff [were] aware of this chain of events." (*Id.*) Defendant Roderick handcuffed Plaintiff after the assault occurred and

6

escorted him to segregation, issuing a misconduct report when Plaintiff "resist[ed] being cuffed."

(*Id*). Defendant Unknown Party reviewed the charges against Plaintiff. (*Id*.) There are no further

allegations naming Defendants Roderick or Unknown Party. (*See id*.)

Even if Plaintiff was robbed by three other inmates, the mere fact of being robbed, without

more, does not dictate that Plaintiff faced a substantial risk of further harm under the objective

prong for a failure to protect claim. *See Farmer*, 511 U.S. at 834. Plaintiff's allegations also fail to

satisfy the subjective prong. Although Plaintiff alleges that "staff" were aware he had been robbed

by three inmates because non-party correctional staff "contacted the control center," (Compl., ECF

No. 1, PageID.4), he fails to allege any facts to suggest that Defendants Roderick or Unknown

Party knew that Plaintiff faced *any* risk of harm of assault from two other inmates, let alone that

they knew Plaintiff faced a substantial risk of harm and disregarded it. Although Plaintiff

emphasizes that he is suffering "mentally to this day following these events," he has not connected

that suffering to the deliberate indifference of Defendants Roderick or Unknown Party.[2]

Plaintiff's allegations also refer to "all of these people," "staff," and "they," with additional

references to two non-party ICF staff when describing the events in his complaint. (*See id*.)

However, Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or 'staff' or

---

[2] To the extent that Plaintiff intends to allege that his confinement in segregation violated his Eighth Amendment right to be free from cruel and punishment, Plaintiff has failed to show or allege that he was deprived of the "minimal civilized measure of life's necessities" or that his confinement "involve[d] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id*. Plaintiff has neither alleged that the length of his confinement in segregation exceeded "the evolving standards of decency" characterized in *Estelle*, 429 U.S. at 102–03, nor has he alleged that he was denied basic human needs and requirements while in segregation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

'they'] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to "all of these people," "staff," and "they" are insufficient to show that any individuals, let alone Defendants Roderick and Unknown Party, were deliberately indifferent to a substantial risk of harm to Plaintiff.

Under these circumstances, Plaintiff fails to state Eighth Amendment failure to protect claims against Defendants Roderick and Unknown Party.

### 2.    Defendants King, Page, and Russell

Plaintiff asserts that because "staff [were] aware" of the robbery before he was assaulted, he filed a grievance about the matter that was "was ultimately denied by Warden C. King, CRR D. Page, and Richard D. Russell." (Compl., ECF No. 1, PageID.4.) The Court generously construes these statements to raise a failure to protect claim against Defendants King, Page, and Russell. However, there are no further allegations against these three Defendants. Plaintiff's allegations that "staff [were] aware of this chain of events," is conclusory and insufficient to suggest that Defendants King, Page, or Russell knew that Plaintiff faced any risk of harm from other inmates after being robbed, or that they knew Plaintiff faced a substantial risk of harm and disregarded it.

To the extent that Plaintiff seeks to hold Defendants King, Page, and Russell liable due to their supervisory positions, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556

F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants King, Page, or Russell encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

For these reasons, Plaintiff fails to state Eighth Amendment failure to protect claims against Defendants King, Page, and Russell.

C.    **Fourteenth Amendment Due Process Claims**

1.    **Issuance of the Misconduct Report and Placement in Segregation**

Plaintiff alleges that Defendants Roderick and Unknown Party violated his Fourteenth Amendment due process rights as related to the issuance of a misconduct report and his placement in segregation. (*See* Compl., ECF No. 1, PageID.4.) Plaintiff claims that after he was robbed by three inmates, he was assaulted by two other inmates. (*Id.*) After the assault, when Defendant Roderick "cuffed and escorted [Plaintiff] to segregation," the misconduct report was issued because Plaintiff "resist[ed] being cuffed." (*Id.*) Defendant Unknown Party reviewed the misconduct report written by Defendant Roderick. (*Id.*) Plaintiff "expressed to all of these people [that] policy states [he] should not be subjected to this treatment [but] they didn't care." (*Id.*) There are no further allegations against Defendants Roderick or Unknown Party.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the

10

inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff was issued a misconduct report because he resisted being handcuffed and escorted to segregation after an assault. (Compl., ECF No. 1, PageID.4.) Plaintiff does not specify how long he was segregated for after Defendant Unknown Party "reviewed" the misconduct. (*See id.*) Plaintiff also does not indicate the ultimate outcome of the misconduct report or what sanctions he received. (*See id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. As an initial matter, because Plaintiff neither indicates how long he was placed in segregation nor what sanctions he received as a result of the misconduct charge, he necessarily fails to show that he received any sanctions that implicate the Due Process Clause of the Fourteenth Amendment. And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as

11

contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Therefore, Plaintiff has failed to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or that his placement in segregation after the assault constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87.

Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

12

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendant regarding his misconduct charge and his placement in segregation.

### 2.    Prison Grievance Procedure

Plaintiff's complaint alleges that Defendants King, Page, and Russell denied Plaintiff's grievance regarding the misconduct report that was issued against him. (Compl., ECF No. 1, PageID.4.) Based on these allegations, the Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim regarding his use of the grievance procedure at LRF.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure at LRF will be dismissed for failure to state a claim.

### D.    Section 1983 Claims Regarding the Violation of Prison Policy

The core of Plaintiff's complaint centers on the Defendants' alleged failure to follow the MDOC's policy relating to misconduct reports and that "the victim of an assault and battery should not be charged with a violation of this [misconduct] rule." (Compl., ECF No. 1, PageID.4.) Plaintiff

13

asserts that he was the victim of an assault by two other inmates and that "staff" were aware that he was the victim. (*See id*.) He claims that, despite Defendants' knowledge that he was the victim, he was still cuffed, placed into segregation, and received a misconduct report relating to the incident. (*Id*.) The Court construes this allegation to raise a claim under § 1983 regarding the violation of prison policy.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's or the prison's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of the prison's policies will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an

14

appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court

concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue

Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445

(1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:      June 23, 2026                        /s/ Jane M. Beckering
                                                 Jane M. Beckering
                                                 United States District Judge